# STATE OF VERMONT

# ENVIRONMENTAL COURT

Appeals of Perrine, <u>et al.</u>    }
}
}    Docket Nos. 221-12-03 Vtec
}    and 38-3-04 Vtec
}
}

### Decision and Order on Cross-Motions for Summary Judgment

In Docket No. 221-12-03 Vtec, Appellant M.W. 'Bud' Perrine appealed from a decision of the Development Review Board (DRB) of the Town of Richmond dated November 24, 2003, affirming the Zoning Administrator's determination that a proposed 8-lot subdivision requires application and review as a Planned Residential Development (PRD). In Docket No. 38-3-04 Vtec, Appellants M.W. ' Bud' Perrine and the WHD Development Corporation[1] appealed from the DRB's February 19, 2004 decision denying the application for subdivision review of the proposed 8-lot subdivision. Appellants are represented by Vincent A. Paradis, Esq. and Christopher D. Rottler, Esq.; the Town of Richmond is represented by Mark L. Sperry, Esq. Both parties have moved for summary judgment on the question of whether the proposed 8-lot subdivision requires application and review as a Planned Residential Development (PRD).

The following facts are undisputed unless otherwise noted. In August of 1994, Appellant Perrine purchased approximately 179 acres of land located on the southerly side of the Richmond-Hinesburg Road and easterly of Town Highway No. 2, in the Agricultural-Residential (A/R) zoning district. In October of 1994, Appellant Perrine purchased an additional approximately 50 acres of land (the 50-acre parcel) located adjacent to, but farther from the road than, the 179-acre parcel purchased in August. Also in 1994, a boundary adjustment not at issue in this appeal resulted in the addition of 1.3 acres of a neighbor's land to the 50-acre parcel, and the conveyance of 5.51 acres of the original 179-acre parcel to the neighbor, so that the original parcel after the boundary adjustment (the 1994 parcel) actually contained approximately $173^{1\!/_2}$ acres. See Diagram 1 (1994-5), attached[2].

Appellant Perrine applied for and received a zoning permit in 1994 to build a house on the 50-acre parcel; it was built and approved for occupancy in August of 1995. A 15-foot-wide gravel driveway provided access to that house. The gravel driveway proceeded from the Richmond-Hinesburg Road in a southeasterly and easterly direction, across the $173^{1\!/_2}$-acre parcel to the house on the 50-acre parcel. While the 50-acre parcel is labeled as "Lot 5" on a 2003 survey[3] provided as Exhibit A to the Perrine affidavit filed on March 3, 2004, neither party suggests that it ever merged with the 179-acre parcel or that it should be counted as a subdivided lot for the purposes of determining whether the PRD requirement is triggered.

In 1997, Appellant received subdivision approval to divide the original 1994 parcel into five lots: four residential building lots near the road (the 1997 lots - labeled as Lots 1 through 4 on the 2003 survey), each approximately 2½ to 3½ acres in size, and the remaining approximately

162-acre parcel of retained land (the 1997 retained land) lying to the south and west of the road frontage and of the four 1997 lots. Of the 1997 lots, Lot 1 has frontage and access directly on the Richmond-Hinesburg Road. Lot 2 has frontage on the Richmond-Hinesburg Road and on a 60-foot-wide subdivision roadway known as Wild Apple Lane, which also provides access to Lots 3 and 4. The 1997 subdivision plan shows a 40-foot-wide extension of Wild Apple Lane as extending to the boundary made by Lots 3 and 4 with the retained land. It also shows a 60-foot-wide drive curving around the northerly and westerly boundaries of Lot 4, but located on the retained land, not proposed to be a subdivision roadway, and labeled " Private Drive (to Perrine Residence)." However, the actual 15-foot-wide gravel driveway remained in its former location, passing over Wild Apple Lane and continuing between Lots 3 and 4 to the residence on the 50-acre-parcel. See Diagram 2 (1997), attached.

In 1998, Appellant Perrine conveyed the 1997 lots and Wild Apple Lane to the Wild Apple Hill Development Corporation, reserving a non-exclusive right to use the common right-of-way of Wild Apple Lane for access to the 1997 retained land and the residential dwelling on the 50-acre parcel. Prior to the 2003 application that is the subject of this appeal, the four 1997 lots were conveyed to their homeowners and Wild Apple Lane and certain utility easements were conveyed to the Wild Apple Hill Homeowners' Association.

Based on the 2003 survey attached to the Perrine affidavit, it appears that in 1999 an additional lot (labeled as Lot 6 on that survey) was subdivided from the northwesterly end of the 1997 retained land and was sold to another unrelated owner. It contained an existing barn and had access both to the Richmond-Hinesburg Road and to Town Highway No. 2. Neither party mentions the 1999 lot or suggests that it should be counted as a subdivided lot for the purposes of determining whether the PRD requirement is triggered; however, the number of lots is such that it does not change the analysis.

Thus, as of and after the additional lot was conveyed in 1999, and continuing through the filing of the present application in mid-2003, Appellants owned an approximately 150-acre parcel (the 1999 retained land): the original 179-acre parcel, minus 5.51 acres in the 1994 boundary adjustment, minus 11.86 acres in the four 1997 lots, and minus another 11.2 acres in the 1999 lot. See Diagram 3 (1999), attached.

In June of 2003, Appellants submitted a new subdivision application (the 2003 subdivision proposal) of the 1999 retained land; it is this proposal that is the subject of the present appeal. Appellants propose to divide the 1999 retained land into the following lots: seven residential building lots (each approximately 2½ to 3½ acres in size) adjacent to the four 1997 lots, the land lying under the proposed Wolf Lane[4] (which appears from the plan to be proposed to be deeded to the Town), and the remaining parcel of approximately 80 acres of retained land (the 2003 retained land). See Diagram 4 (2003), attached.

Docket No. 221-12-03 Vtec is the appeal from the decision that the zoning regulations require this proposed subdivision to be submitted for approval as a Planned Residential Development (PRD). Docket No. 38-3-04 Vtec is the appeal from the DRB's denial of Appellants' application for subdivision approval, presumably because it was not submitted as a PRD.

The issue on summary judgment is whether the 2003 subdivision proposal is to be considered independently of the earlier subdivisions, or whether all lots created since 1996 are to be counted towards the number of lots triggering the requirement of PRD review. See § § 3.1.3(e) and 5.8.1(a) of the Zoning Regulations.

In 1996, the Town of Richmond adopted the current versions of § § 3.1 and 5.8 of the Zoning Regulations. Section 3.1.3(e) provides for PRD review under § 5.8 of any subdivision of ten or more lots in the Agricultural/Residential (A/R) zoning district:

Subdivision of lots using a Planned Residential Development under Section 5.8 of these Zoning Regulations is encouraged in the A/R District and is required for all subdivisions over nine (9) lots in the A/R District. The retention of agricultural, forest or outdoor recreational land will be encouraged in such PRD subdivisions.

Section 5.8.1(a) provides that a PRD is permitted only in the A/R and two other districts, and that the PRD provision may be used for any sized parcel, " but is <u>required</u> for a development of over nine lots, . . . ." (Emphasis in original.) Reading these two sections together, a development of a ten-or-more-lot subdivision in the A/R district requires PRD approval; that approval is not required for developments of nine or fewer lots (although it is ' encouraged.' )

The Town argues that the present application proposes a subdivision of eleven lots, plus the 2003 retained land, for a total of twelve lots. This calculation counts the four 1997 lots plus the seven lots now proposed, plus the 2003 retained land, as lots having been created[5] by Appellants since the adoption of the ordinance in 1996, requiring PRD approval of the 2003 proposal.

However, we must apply the Richmond zoning and subdivision regulations as they are written, and those regulations simply require PRD review for all subdivisions over nine lots. The regulations do not require that all lots created by a landowner or related corporation within any particular period of time be counted for the purposes of determining compliance with this requirement. Nor do they provide that all lots ever created from an original parcel (after the adoption of this ordinance requirement in 1996) be counted for the purposes of determining compliance with this requirement. The Town could adopt a more stringent or more specific ordinance that does so require, but it has not done so and the Court cannot supply it. See, <u>Appeal of Stevens</u>, Docket No. 2001-163 (Vt., December 21, 2001) (three-justice panel).

Under the present regulations, once an earlier subdivision of a landowner's property has been sold, there is nothing in the zoning or subdivision regulations that prohibits the landowner from proposing a subsequent subdivision that is also below the ten-lot threshold, so as to continue to avoid the PRD requirements. This may be poor land-use policy, and the Town may wish to prohibit or discourage it; however, it has not done so in its present zoning regulations.

The purpose statement in § 5.8 regarding PRDs, and any discussion in the Town Plan, does not alter this result. As we stated in a case involving a similar purpose statement in the Jericho subdivision regulations:

" [t]hese are hortatory, not regulatory provisions. That is, the Planning Commission is directed to consider these purposes when administering the Subdivision Regulations, but these purposes are not mandatory. They provide a guide or context to the administration of the regulations, but they are not independently enforceable just as the provisions of a municipal plan are not independently enforceable." Appeal of Baribault, et al., Docket No. 165-9-98 Vtec (Vt. Envtl. Ct., May 30, 2000), citing Kalakowski v. John A. Russell, 137 Vt. 219, 225-26 (1979).

With regard to the present application, the history of the land transactions and applications shows that a five-lot (or six-lot, if the road is counted as a separate lot) subdivision was created in 1997, consisting of four lots to be conveyed and the other parcel of Appellant's retained land. That subdivision was followed by a two-lot subdivision in 1999, consisting of one conveyed lot and the other parcel of the remaining 150 acres of Appellant's retained land. At least as of the time the 2003 subdivision was proposed, Appellant had sold off all the land not retained in those transactions, and held only a single parcel of approximately 150 acres.

The 2003 subdivision proposes an eight- or nine-lot subdivision of that single parcel (depending on the status of the land lying under the proposed Wolf Lane), consisting of seven building lots, and a remaining approximately 80-acre parcel of Appellants' retained land. It is not required to be submitted for approval as a PRD.

The Town also argues that, regardless of the number of lots, the proposed 2003 subdivision is also a ' resubdivision' or amendment of the 1997 subdivision, at least because part of the private roadway on the 1997 retained land is shown in a different location than the subdivision roadway in the proposed 2003 subdivision.

The term" subdivision" is defined in Article IX of the Subdivision Ordinance as:

Any lot, vacant or improved, which is divided or proposed to be divided into two (2) or more lots, parcels, or units, for the purpose of offer, sale, lease or development. The term includes amended subdivisions and resubdivisions. The term also includes the development of a lot as a . . . Planned Residential Development. Boundary adjustments shall not be considered to be subdivisions. . . . .

The present proposal falls within this definition, whether it was under or over the nine-lot limit and whether or not it were to be reviewed as a PRD.

The term " resubdivision or amended subdivision" is defined as:

Any change in a recorded subdivision plat, other than a minor revision as defined above, or a change that affects any area to be reserved for public use, or a change that affects any map or plan legally recorded prior to the adoption of any subdivision regulations by the Town of Richmond.

The term " minor revision" to a subdivision is defined as one in which no additional lots are created; no lot is diminished by more than 10% in area (or below the minimum lot size); no septic system design or location is changed; no " road or other public improvement" design or

specification is changed; no road location is changed such that the centerline is moved by more than 20 feet or the length of the segment moved is more than 100 feet; and no building site is altered.

The 1997 subdivision plat showed the four lots and Wild Apple Lane as the subdivision roadway. It showed various features on Appellant's then-retained land that were not within the boundaries of the 1997 subdivision, but did not show the entirety of Appellant's then-retained land[6]. With regard to the private driveway (to the residence on the 50-acre parcel) shown as curving around the northerly and westerly boundaries of Lot 4, only the curb cut for it at its intersection with Wild Apple Lane was part of the 1997 subdivision. That curb cut, which is the location of the new Wolf Road in the 2003 subdivision proposal, is unchanged in the 2003 proposed subdivision, and all the remaining elements of the 1997 subdivision are not only unchanged by the 2003 subdivision proposal, but have been sold and are no longer owned by Appellants. The fact that the private drive on Appellant's retained land was in a different location in 1997 than in the 2003 proposal does not make it part of the 1997 subdivision plat, as its location within Appellant's retained land was not subject to regulation at that time. The fact that a subdivision roadway is now proposed in that location in 2003 should certainly be reviewed for compliance with the subdivision ordinance in connection with the present application, but it does not make the 2003 subdivision proposal an amendment or resubdivision of the 1997 subdivision as those terms are defined in the ordinance.

Accordingly, based on the foregoing, Appellants' Motion for Summary Judgment is GRANTED and the Town's Motion for Summary Judgment is DENIED. Docket No. 221-12-03 Vtec is concluded by this decision: the zoning regulations do not require this proposed subdivision to be submitted for approval as a Planned Residential Development (PRD). In Docket No. 38-3-04 Vtec, the DRB's denial of Appellants' application for subdivision approval is hereby vacated and the matter is remanded to the DRB for its consideration of Appellants' 2003 application for subdivision approval on its merits.

Done at Barre, Vermont, this 30th day of November, 2004.

_____
Merideth Wright
Environmental Judge

**Footnotes**

1.     Ownership of the property at issue in the later appeal appears to have been transferred to the corporation of which Appellant Perrine is an authorized agent.

2.     Four diagrams are attached to this decision to illustrate the text. They are not essential to the decision and are not part of the electronic version of the decision. Copies may be obtained from the Court.

3.     The 50-acre lot was conveyed to Merrill Lynch Credit Corporation in connection with a foreclosure in mid-2003 and is not at issue in this appeal.

4.     Based on the property line legend in the proposed subdivision plan, it appears that the land lying under the 60-foot-wide easement for Wolf Lane would either remain with the retained parcel or would be a separate lot. If it is proposed as a separate lot, either to be deeded to the Town or to a homeowners' association, then the 2003 proposal is for a nine-lot subdivision rather than an eight-lot one. (Similarly, if Wild Apple Lane is held by the homeowners' association as a separate lot, then the 1997 subdivision was a six-lot subdivision.) However, the number of lots is such that under either scenario it does not change the analysis.

5.     The Town's argument appears to disregard the 1999 lot and the retained land in each earlier subdivision for the purposes of these calculations.

6.     This analysis may have been different if the recorded 1997 subdivision plat had showed all of Appellant's then-retained land as a fifth lot, but it did not do so.